**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SETU PANDYA and HIMA VYAS,<br>Plaintiffs,<br>v.<br>NORTHWESTERN MUTUAL, et al.<br>Defendants. | Civil Action No.: 25-16697<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

This matter comes before the Court on defendants Northwestern Mutual and Louis Pietig, II's ("Pietig", and collectively with Northwestern Mutual, "Defendants") partial motion to dismiss the plaintiffs' complaint, ECF No. 1-1, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 4. Plaintiffs, Setu Pandya ("Pandya") and Hima Vyas ("Vyas", and collectively with Pandya, "Plaintiffs") opposed the motion. ECF No. 8. Defendants replied. ECF No. 12. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. BACKGROUND[1]

This case arises from Defendants' alleged mishandling of investments as part of Plaintiffs' variable universal life insurance policy (the "Policy") which allegedly resulted in professional harm and monetary loss. ECF No. 1-1 ("Compl.") ¶ 1. Plaintiffs purchased the Policy, which was issued by Northwestern Mutual, from Pietig, a Northwestern Mutual agent and financial advisor. *Id.* ¶¶ 3, 18. The Policy was issued in Vyas' name with Pandya "serving as the policyholder responsible for investment decisions" and was intended to support Vyas and Pandya's "long-term

[1] The following facts are accepted as true for the purposes of the motion to dismiss.

estate planning needs." *Id.* ¶ 4. That is, the Policy offered "life insurance coverage while also serving as an investment vehicle." *Id.* ¶ 19.

Problems arose, however, because Pandya is subject to certain investment restrictions from his occupation. Pandya is a certified public accountant at Ernst & Young LLP ("EY") which "maintains strict policies regarding personal investments and financial disclosures." *Id.* ¶¶ 2, 17. Plaintiffs allege that "[o]n or about the time of the [P]olicy's initiation," Pandya informed Pietig orally and in writing that no investments should be allocated to funds prohibited under EY policies. *Id.* ¶¶ 5, 20. For example, Plaintiffs identified that their investments should not be directed into any American Century Funds. *Id.* Pietig "responded to the directive and did not express any objection, disagreement, or concern" with these instructions. *Id.* ¶ 21.

Thereafter, Northwestern Mutual invested approximately $5,000 across multiple funds on Plaintiffs' behalf. *Id.* ¶ 22. Critically, Plaintiffs allege that approximately $500 was allocated to the American Century VP Balanced Fund—one of the funds Pandya expressly prohibited because of EY's restrictions. *Id.* Pandya discovered the investment after EY initiated an audit of his financial holdings. *Id.* ¶ 23. Upon learning of the investment, Pandya contacted Pietig who explained that Northwestern Mutual "had failed to turn off the 'rebalancing' function, which had triggered the unauthorized allocation into the American Century fund." *Id.* ¶ 24.

Ultimately, EY concluded that Pandya violated its investment restriction policy. *Id.* ¶ 27. EY imposed a financial penalty amounting to 2.5% of Pandya's base salary and documented the incident in his professional file. *Id.* ¶ 28. Plaintiffs also allege that the incident materially harmed Pandya's professional trajectory and reputation. *Id.* Pandya was allegedly being considered for a promotion to partner and was denied that promotion. *Id.* ¶¶ 29, 39. Plaintiffs contend that Pandya was denied that promotion because he violated EY policy. *Id.*

Plaintiffs filed suit in the Superior Court of New Jersey Law Division, Morris County. ECF No. 1. Defendants removed the case to this Court. *Id.* Plaintiffs allege seven counts including negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the New Jersey Consumer Fraud Act ("NJCFA"), professional negligence, breach of fiduciary duty, and negligent misrepresentation. Compl. ¶¶ 33–89. Defendants filed the instant partial motion to dismiss Plaintiffs' NJCFA, breach of fiduciary duty, and negligent misrepresentation claims.

## II. <u>LEGAL STANDARD</u>

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted). In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).

## III. <u>DISCUSSION</u>

Defendants move to dismiss Plaintiffs' New Jersey Consumer Fraud Act, breach of fiduciary duty, and negligent misrepresentation claims for failure to state a claim. Plaintiffs do not oppose Defendants' motion to dismiss the breach of fiduciary duty claim. ECF No. 8 ("Pl. Opp.") at 17–18. As such, Defendants' motion as to that claim is granted. Plaintiffs do, however, oppose

the motion to dismiss the NJCFA and negligent misrepresentation claims. The Court addresses those claims in turn below and finds that Plaintiffs have failed to state a claim for an NJCFA violation but have adequately pleaded negligent misrepresentation.

**A. New Jersey Consumer Fraud Act Claim**

To state a claim under the NJCFA a plaintiff must allege "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the [plaintiff's] ascertainable loss." *Mattson v. Aetna Life Ins. Co.*, 124 F. Supp. 3d 381, 391 (D.N.J. 2015). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). The first two categories are relevant here. The unlawful act or practice may occur "in connection with the sale or advertisement of any merchandise," which includes insurance policies. N.J.S.A. 56:8-2; *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 551 (N.J. 1997). Additionally, "a claim arising under [the] NJCFA must be plead with particularity in accordance with Rule 9(b)." *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2014 WL 3853900, at *6 (D.N.J. Aug. 5, 2014); Fed. R. Civ. P. 9(b). "That heightened pleading standard requires the plaintiff to 'state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged.'" *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012) (quoting *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007)).

Defendants contend that Plaintiffs' allegations pertain to post-sale "administration issues, not deception at the point of sale." ECF No. 4-1 ("Def. Br.") at 5–6. As such, Defendants' investment of Plaintiffs' money into a prohibited account cannot amount to an NJCFA violation which, according to Defendants, must occur "in connection with [a] sale." N.J.S.A. 56:8-2. They

further argue that Plaintiffs' claims are not alleged with particularity as required under Rule 9(b). Def. Br. at 7–8. Plaintiffs, for their part, argue that they allege two unlawful acts at the point of sale with particularity: 1) an affirmative act in which Defendants assured Plaintiffs their investment directive would be followed and that directive was not followed and 2) that Defendants omitted and failed to disclose information regarding the automatic rebalancing feature that resulted in the prohibited investment. Pl. Opp. at 12–15; Compl. ¶¶ 62–63.

The Court notes at the outset that NJCFA claims are not restricted to fraud at the point of sale as the Third Circuit has applied the NJCFA when "an insurance company is alleged to have fraudulently *performed* a contract with a consumer." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 918 (3d Cir. 2018) (emphasis added). Nevertheless, Plaintiffs' allegations of an affirmative unlawful act are inadequately pleaded. Affirmative acts "include unconscionable commercial practices, fraud, deception, false promise, false pretense, and misrepresentation." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 791 (N.J. 2005). "Intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." *Cox*, 647 A.2d at 462.

Plaintiffs argue that they adequately alleged Defendants engaged in an affirmative wrongful act at the point of sale, namely an affirmative misrepresentation or unconscionable commercial practice. *See* Compl. ¶ 61. Plaintiffs alleged Pandya informed Pietig orally and in writing "[o]n or about the time of the [P]olicy's initiation," that investments should not be made into funds prohibited by EY's policy. Pl. Opp. at 5–6 (quoting Compl. ¶¶ 5, 20). Pietig allegedly responded to Pandya's directive and "did not express any objection, disagreement, or concern." Compl. ¶ 21. Ultimately, the directive was not followed, which purportedly led to EY denying Pandya's promotion and issuing a financial penalty of 2.5% of Pandya's base pay. *Id.* ¶¶ 27–29, 39.

The problem for Plaintiffs is that, although they do appear to allege misconduct at the time of sale, their allegations do not inject the level of particularity required under Rule 9(b). "To satisfy the heightened pleading standard for a fraudulent affirmative act, a plaintiff need not plead the particular date, time or place of the fraud; however, 'the plaintiff must indicate at the very least who made the material representation giving rise to the claim and what specific representations were made.'" *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 373 (D.N.J. 2015) (quoting *NN & R, Inc. v. One Beacon Ins. Grp.,* 362 F. Supp. 2d 514, 518 (D.N.J. 2005)); *see also In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (Rule 9(b) requires pleading "the 'who, what, when, where and how' of the events at issue").

Although Plaintiffs allege that Pietig responded to Plaintiffs' investment directive "[o]n or about the time of the [P]olicy's initiation," by not expressing "any objection, disagreement, or concern," this does not describe an affirmative assurance that the investment directive would be adhered to or how and where Pietig purportedly did so. In other words, Plaintiffs have not alleged the "precise substance of the alleged misrepresentations which gave rise to their claims."[2] *Mladenov*, 124 F. Supp. 3d at 373 (citing *In re Riddell Concussion Reduction Litig.,* 77 F. Supp. 3d 422, 435 (D.N.J. 2015)). Accordingly, Plaintiffs have not sufficiently alleged with particularity that Defendants violated the NJCFA with an affirmative act.

Plaintiffs' allegation that Defendants violated the NJCFA by omitting information about the automatic rebalancing feature is similarly not well-pleaded. *See* Compl. ¶ 63 ("Defendants also failed to disclose or actively concealed the existence of the automatic rebalancing feature,

[2] Elsewhere in the Complaint (in the context of the breach of implied covenant of good faith and fair dealing count), Plaintiffs allege "Defendants acknowledged receipt of [the investment] instructions and further confirmed that they had taken steps to comply, including turning off the automatic rebalancing feature." Compl. ¶ 53. This allegation, however, similarly does not identify when or how those assurances were communicated.

which ultimately led to an investment directly contrary to Mr. Pandya's express instructions."). "[W]hen the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud." *Cox*, 647 A.2d at 462 (emphasis in original). Plaintiffs have not alleged facts beyond a mere conclusory allegation that Defendants intentionally withheld information regarding the automatic rebalancing feature. Accordingly, they have not stated an NJCFA claim based on Defendants' alleged omission. Defendants' motion to dismiss Plaintiffs' NJCFA claim is granted.[3]

**B. Negligent Misrepresentation**

As a threshold matter, Defendants contend that Plaintiffs' negligent misrepresentation claim is also subject to Rule 9(b)'s heightened pleading requirement. Def. Br. at 7–8. There is case law to that effect. *See, e.g.*, *Bergen Beverage Distributors LLC v. E. Distributors I, Inc.*, No. 17-4735, 2017 WL 5714702, at *3 (D.N.J. Nov. 28, 2017). However, when, as here, a negligent misrepresentation claim does not sound in fraud but is pleaded separately and based on a theory of negligence, Rule 9(b) does not apply. *See, e.g.*, *Kirtley v. Wadekar*, No. 05-5383, 2006 WL 2482939, at *2 (D.N.J. Aug. 25, 2006) ("[B]ecause negligent misrepresentation is expressly alleged in the third claim, and because the third claim is pled separately from the fraud claims, that is enough to avoid triggering Rule 9(b)."); Compl. ¶ 86 ("Defendants failed to exercise reasonable care or competence in obtaining and communicating accurate information regarding the configuration and operation of the policy's investment settings.").

[3] Defendants also argue that the NJCFA claim must be dismissed because Pietig, an insurance broker, cannot be liable under the NJCFA's "semi-professional exclusion for licensed insurance producers performing regulated brokerage and advisory service." Def. Br. at 6. However, the Supreme Court of New Jersey recently held that the semi-professional exclusion for NJCFA liability is not applicable to insurance brokers. *See Lowe v. Audet*, 264 N.J. 494, 507 (2026) ("[S]emi-professionals like insurance brokers, producers, and agents are not exempt from the CFA."). Thus, Defendants' argument provides no basis for dismissal.

With that standard in mind, Plaintiffs' allegations that Defendants negligently misrepresented that the investment directive would be followed fare better than their NJCFA claims. Compl. ¶¶ 83–89. "To state a claim for negligent misrepresentation, a plaintiff must show (1) an incorrect statement, (2) negligently made, (3) upon which plaintiff justifiably relied, and (4) resulted in economic loss or injury as a consequence of that reliance." *Noble v. Samsung Elecs. Am., Inc.*, No. 15-3713, 2018 WL 801590, at *5 (D.N.J. Feb. 8, 2018) (quotation omitted).

Each element is adequately alleged here. Plaintiffs allege that Defendants "acknowledged receipt of" the investment instructions and "further confirmed that they had taken steps to comply, including turning off the automatic rebalancing feature." Compl. ¶ 53. This statement was apparently incorrect, and it is reasonable to infer it was negligently made, considering the rebalancing feature was not turned off. Plaintiffs further allege that they justifiably relied on Defendants' assurances that the Policy would be managed in accordance with Pandya's investment instructions, and that the resulting unauthorized allocation caused a financial penalty amounting to 2.5% of Pandya's base salary. *Id.* ¶¶ 28, 84–89. Accordingly, Plaintiffs have sufficiently stated a claim for negligent misrepresentation.

## IV. CONCLUSION

For the reasons set forth above, **IT IS** on this 23rd day of November, 2026;

**ORDERED** that Defendants' partial motion to dismiss (ECF No. 4) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Plaintiffs' New Jersey Consumer Fraud Act claim is **DISMISSED** without prejudice; and it is further

**ORDERED** that Plaintiffs' breach of fiduciary duty claim is **DISMISSED** with prejudice; and it is further

**ORDERED** that Defendants' motion to dismiss Plaintiffs' negligent misrepresentation claim is **DENIED**; and it is further

**ORDERED** that Plaintiffs shall have thirty (30) days from entry of this Opinion and Order to file an amended complaint that addresses the deficiencies identified in this Opinion and Order. Insofar as Plaintiffs submit an amended complaint, they shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(b)(2).

**SO ORDERED.**

*s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**